First case on the call of the docket. Today, Wednesday, May 23, 2012, is agenda number 12. Case number 113204, Carter v. SSC Odin. Counsel for the appellant, please proceed. Thank you, your honor. Good morning. May it please the court. This case, when everything is said and done, is about a contract. Excuse me, did you mention your name? I'm sorry, your honor. Malcolm Harkins for the health care center, for Odin Health Care Center. The case, as I said, is about a contract. It raises two issues. First, whether a contract exists. And secondly, if it does, who is bound by the contract? It happens that arbitration is the subject of the contract. But under federal law and under this court's decision when the case was here originally, the fact that arbitration is involved should make no difference. General principles of contract law ought to decide this case. And on this record, there ought be no question that the arbitration contract is valid and it's enforceable. Although the appellate court explicitly refused to enforce the arbitration contract because, quote, the arbitration agreements, therefore, do not contain mutually binding promises to arbitrate, but only a unilateral obligation on the part of Joyce, the decedent, to arbitrate her personal injury claims. The agreements, therefore, are not enforceable. The problem with that is that the appellate court has premised its conclusion on the assumption that in order for an arbitration contract to be viable, there must be mutually binding promises to arbitrate. And that's not a correct statement of the law. This court's decision in Armstrong makes that very clear, that mutually binding promises, let alone mutually binding promises to arbitrate, are not required. What is required is consideration. And even if you assume that the health care center in this case promised to arbitrate nothing, there is consideration in this arbitration agreement aplenty. For one thing, the center agreed that it would pay the fees of the arbitrators, win or lose. The center also agreed that it would pay up to $5,000 of attorney's fees and costs that the resident occurred in arbitration, again, win or lose. The center agreed that the resident could choose the location of the arbitration. And finally, by specifically saying that the arbitration was subject to the Federal Arbitration Act, the center agreed that the results of the arbitration were binding and could be appealed only for the very limited reasons that Section 10 of the Federal Act provides, basically some sort of fraud or misconduct on the part of the arbitrators. Even if there was no mutual promise to arbitrate, each one of those things individually constitutes a detriment for one party and a benefit to the other party. And individually, each one of them would provide consideration to support the contract. And that becomes very clear if you look at two of those elements that can be quantified in a dollar value. Admittedly, one of them is speculative. The promise to pay $5,000 in attorney's fees, win or lose, and then the promise to pay the arbitrator's fees, again, win or lose. The arbitrator's fees, as we point out in our brief, could be significant, five to six figures possibly. When those promises are taken together, there is overwhelming consideration. What happened here, and where I believe the appellate court went wrong because it refused to enforce the contracts because the arbitration agreements do not contain mutually binding promises to arbitrate, the court effectively adopted a special consideration rule that applied only to arbitration contracts. And that is not permissible under the FAA. In other contracts, we could have had, for example, a unilateral contract where I promised to pay for performance. Under the appellate court's rule requiring mutual promises to be exchanged, you can't have unilateral contracts. And you probably exclude most option contracts because it's not mutual promises. In one instance, it's a promise to pay in return for performance. The case that the appellate court relied upon do not stand for the proposition that there must be mutually binding promises to arbitrate. There are two cases. One is Gonzales, and the other one, frankly, I always get tongue-tied when I try to say it, Vasilkovska. I got close, I think. The courts found that there was no other consideration other than the purported promise to arbitrate and that that promise was illusory because the car dealer had specifically excluded anything that it might be required to arbitrate. But if we were to change the facts and use a hypothetical here, if the car dealer had said to the purchasers, if you promise to arbitrate, I will pay for the first $5,000 of gas that you use in that car, and if you agree to take that car on a trip to Las Vegas and stay there for one week, I will pay all of your travel expenses, there would be no question that that arbitration agreement should be enforceable because there's binding consideration in the form of the $5,000 and the promise to pay the attorney's fees. Sir, is it possible for the decedent to bind the plaintiff to an agreement she didn't sign? That jumps ahead to the wrongful death piece, Your Honor. But again, with respect to the wrongful death piece, I think that where the court went wrong was that it based its conclusion on that and also on the fact that it said that the claim, the wrongful death claim, was an independent claim that belonged to the beneficiaries. And I think that those things are wrong and you can see that when you look at the wrongful death act. Part of the problem below was that the court did not consider the terms of the wrongful death act or this court's decisions interpreting it. Now, if you look at the wrongful death act, I think there are four things that you take from that that are pertinent in resolving the question that you pose, Justice. The first is, under Section 1, it states that the tort must have occurred to the decedent, that the decedent must have suffered some wrongful act, neglect, or default. The second principle is that that act had to be such that the decedent, at the time of his death, could have maintained an action to obtain damages, therefore. The third point is that Section 2.1 of the act characterizes the wrongful death cause of action as an asset of the estate. And the fourth point is that Section 2 provides that the wrongful death cause of action must be brought by the personal representative of the decedent and no one else. The meaning of those provisions, as they're applied, can be found in this court's decisions. The first is, with respect to Section 1, it's the tort that is committed against the decedent that gives rise to the wrongful death cause of action, not the decedent's death, the injury to the decedent. The effect of the death under this court's decision, particularly under the Crane decision, the Mooney decision, we set them out in our opening brief in separate numbered paragraphs, but the effect of the decedent's death is that it causes the wrongful death cause of action, in this court's words, to survive to his representative. But whether he lives or dies, the cause of action is the same. And then in Williams, of course, this court held that the Wrongful Death Act transfers the cause of action to the personal representative. So the personal representative's cause of action is derived from the cause of action that the decedent would have possessed had he lived. May I ask maybe a fifth point then? The statute itself says that a wrongful death action shall be brought by and in the names of the personal representatives of such a deceased person, and this is the issue I'd like you to address in terms of damages, the amount recovered shall be for the exclusive benefit of that surviving spouse and next of kin and of such deceased persons. Furthermore, we've said amounts recovered are for the pecuniary losses which a surviving spouse and next of kin have sustained by reason of the death of the injured person and may include damages for their grief, sorrow, and mental suffering. So in other words, while as you described it, the tort, the injury is done to the deceased person, the recovery, the damages are for the losses of the survivors. Doesn't that somehow set that apart? This is not the injuries, the pain and suffering of the deceased person and recovery for the deceased's own suffering and injury, but rather a separate idea of damages done to the survivors. Correct. But the problem with that is it's only providing a special rule of how the damages are to be calculated in the first instance and to whom they're to go. It's exempting them from the normal transfer or the normal rules that would apply if the recovery were in fact to pass through the estate, and it applies the act as you know says that the court is to make the distribution and it provides how the distribution is to be made. But I believe it provides a special rule for how the damages are to be calculated and who gets them. But it doesn't change the fact that the statute provides that the cause of action is an asset of the estate. And the distinction here is, it goes back to your question, Your Honor, is that who gets the damages doesn't dictate the nature of the cause of action or who possesses it. Well, maybe I want to pursue this a little bit more with you. Certainly damages are an element of a cause of action. And the damages are not, as I think we agree, are not the damages of the decedent. They are personal to the survivors. Yes. So while, yes, I mean, this may be an unusual kind of cause of action where you have damages done to one person, I mean, you have injury done to one person, but the damages are for the loss of someone else. So it seems to me this cause of action, it's not as simple as saying this is purely the cause of action of the decedent. No. Your Honor, I don't think this is simple at all. But I do think that we have to be guided by the words of the statute in terms of deciding whether or not the personal representative, the executor here, is bound by the underlying contract. And the words of the statute provide that the personal representative has to bring the cause of action and that the cause of action is an asset of the estate. Now, the fact that someone else gets those damages does not change the implications of the statute in terms of who has to bring it and the fact that the personal representative is, according to the statute, is bringing it as the personal representative of the deceased person and that it's an asset of the estate. But who gets the damages doesn't change that. Well, again, just one last time, it's not just where the dollars go. It's what is the nature of the injury. And the injury that's being compensated are the survivor's grief, sorrow, and mental suffering. It's their own loss that is being compensated through the wrongful death statute. It's not the loss, it's not the damages, it's not the pain and suffering of the decedent. It's separated from the decedent. Obviously, that's what the statute says, and I can't disagree with that. We may be talking past one another. But what I keep coming back to is the fact that the damages are to go to the next of kin, but the cause of action was the decedent's cause of action. And under the language of this Court's opinions, that cause of action is transferred lock, stock, and barrel to the personal representative and to the estate. I think if derivative means anything, if transfer means anything, or survives to the personal representative means anything, I think it means that when the personal representative brings that cause of action, he or she is in a position where they're bringing what the decedent had, nothing more and nothing less. The difference, of course, is that the measure of damages is different, but I don't believe that that affects the underlying cause of action. I think the situation here is that the wrongful death cause of action is a specie of property. It's a chosen action, and the chosen action transfers to the estate. The personal representative's rights in the chosen action are derivative, under the case law here, of the decedent's rights in the chosen action. If this were a piece of real property, for example, and we cite one case in our book where, I'm sorry, I think I brought the allergies here. You're a couple weeks behind us, and they seem to be flaring up. I apologize. But in our brief, we cite one case in which there was an easement that passed through the estate, and the heirs were bound by the easement. That would be true if there were a lease. And I would suggest that if a lease contained a clause that required arbitration, the personal representative would be bound by that lease and by the terms of the lease, despite the fact that he or she hadn't signed it. I think that's the situation that we have here. We don't have real property that is being devolved. We have personality. We have the shows in action that is being devolved, and you get that subject to whatever limitations the decedent put on it at the time. That is the essence of the Varelis case. And it becomes perfectly clear if you read the appellate court's decision in Varelis and then read this court's decision. In Varelis, the appellate court held that the wrongful death cause of action was a separate and distinct cause of action from the wrongful death cause of action, and therefore the claim belonged to the beneficiaries. This court, of course, reversed that and said that the critical factor under the wrongful death act was that because the wrongful death act is derivative, the decedent must have been able to pursue the action for damages at the time of his death. As a result, in that case, and if you recall in Varelis, what happened was that there was an overdose of medication in the hospital, and the decedent initially sued. Judgment was entered. It wasn't final at the time of the decedent's death, but then after his death, there was a satisfaction and the release specifically reserved to his wife, the ability to bring wrongful death claims. But this court said, no, that's not possible because you've resolved the decedent in his lifetime The estate in that case got exactly what the decedent would have had, and because he didn't have the ability to bring a cause of action at the time of his death, the estate couldn't bring the cause of action. I think that if we don't come to that conclusion, if we can say that real property that devolves upon the personal representative in the estate goes to the estate subject to whatever limitations were placed on it by the decedent, but that's not true of a chosen action that involves arbitration, we're back in that conundrum where we're having special rules for arbitration. I think that's the point that the Texas Supreme Court was making as a practical matter when it said that it doesn't make any sense. It creates an anomaly to say, as Varela says, that a decedent can eliminate the entire cause of action by obtaining a judgment prior to death or entering into a settlement, but that the decedent can't limit the cause of action by entering into an arbitration clause. And as the Texas court said in Labatt, that creates a problem because that's a special rule that's precluded by the FAA. That falls exactly within the U.S. Supreme Court's recent decision in Marmette from overturning the Wisconsin Supreme Court in which it said that you cannot have special rules that prohibit arbitration of survival or wrongful death claims. And I thank you for your attention, your time. Thank you. Counsel for the appellee. May it please the court. My name is Stacey Andel and I represent the appellee, Sue Carter. And I agree with my colleague that this case comes down to basic contract principles. I also agree that this case at this point in time is really not about arbitration as it is because that's the subject matter. But it basically comes down to whether or not there's an enforceable contract period, and if so, if a non-signatory to that contract can be bound by it. Now while counsel argues that this is not about arbitration, your honors will see that the foundation of all of their arguments, of the appellant's arguments is basically asking this court to in fact treat the arbitration and arbitration agreement as a super contract. The state and federal law does provide that an arbitration agreement must be held on equal footing with any other contract. And that generally applicable contract defenses apply. And that's all that we are asking in this case. I think to start off with basic contract principles, A, without question, the plaintiff or the appellee, Sue Carter, was not a signatory, was not a party to the contract. I need to back up for one second, because throughout the history of this case we've been operating under an assumption, I believe, or a premise that there were two agreements here. There weren't two agreements here. There were two separate admissions to this nursing home. Ms. Carter originally went into the nursing home in 2005. At that time she signed an admissions agreement and a separate arbitration agreement with the facility. She successfully rehabbed from the facility and was discharged. Unfortunately she deteriorated and a year later she went back into the facility. At that point in time she signed another admission contract and the 2006 agreement. Under the law in this state, in particular as we cited in our brief, the Aon case, when you have two agreements that cover the same subject matter, and as is true in this case with these arbitration agreements, are totally identical, then the initial contract is merged and actually superseded by the second contract. So we're not talking about two agreements. We're talking about the January agreement, and that agreement was only signed by Joy Scott. The first agreement, if this Court believes is valid or is applicable here, was only signed by Joy Scott. It was signed by Sue Carter in her representative capacity, not in her individual capacity. So she was not a party to these agreements. And that brings us to basic contract law. She was not a party to the agreement. And so the question is, can she and the other beneficiaries be bound? And I believe this Court had answered that question in the Trover case when it held that it is a well settled in Illinois that a non-party to an agreement would compel arbitration or be compelled to arbitrate. Nevertheless, what the defendant has said is they look at the wrongful death statute. And there is, and it has been interpreted, and this Court has ruled in the past and for many years, that the wrongful death claim is derivative. But what the appellant seeks to do is to take that term and the concept of it being derivative, and the term derivative and essentially stretch it from Illinois to Texas and all over the country. But this Court, it's clear what this Court meant by that. And what this Court has said is that it is derivative in the sense that in order for the beneficiaries to have a wrongful death claim, the decedent at the time that he or she died must have had a viable claim for injuries. So the derivative nature of the wrongful death claim only goes to the fact that the victim or the decedent who suffered the original injuries at the time that they died must have had a viable claim for those injuries. The whole purpose of that limiting language was to prevent a situation where you had injuries, the decedent prior to dying had a viable claim for those injuries, and that claim was extinguished, extinguished in some way. In other words, that either by settling the case or settling their claim or going to trial and having a judgment, that at the time that they died, they no longer had a right of action. So it's only the right of action that's derivative. What the appellant wants this Court to do. The Act does say that it's an asset, right, of the decedent's estate. Does that have no import? Can't a decedent put restrictions on other assets of its estate? While the Act does use that language, what we know in operation and what we know, which is the case in this State under this law and probate law, is that a wrongful death claim and proceeds of a wrongful death claim are not an asset of the estate. They do not belong to the decedent's estate. They do not pass through the estate. Those proceeds are never subject to other limitations that the decedent has imposed on his estate. For example, wrongful death proceeds do not pass through the estate, and they're not subject to the decedent's debts. The creditors cannot attach or touch the wrongful death proceeds. Is that language in the Act, though? Is the word asset in the Act? The word asset is in the Act, yes, Your Honor. What do we do with that? What we do with it is we have to look at what that realistically means. And what it realistically means is in that situation, a wrongful death claim, it says it's an asset, but it's not actually an asset of the decedent's estate. It is not treated as any other asset of the estate. It does not pass through the estate. It's not subject to, like I said, it's not subject to the decedent's creditors. It's not subject to liens. It's not even subject to the Medicare super lien, believe it or not. Because, and that is because, as this Court pointed out, and I think pointed out in the Williams decision, is that, and you explained and summarized the dual nature of the wrongful death action. In summary, a wrongful death action is a statutory independent cause of action that does not arise until the death. The action is derivative of the injury to the decedent and is grounded on the same wrongful action. And so there have been other jurisdictions in which the appellant has cited in his brief that have held that the wrongful death claim is     wholly derivative. That has never been the holding in this State. This Court has never taken it that far. This Court has said specifically it's derivative in the sense, only in the sense, that in order for the wrongful death claim to exist, there must have been a viable claim. Could a decedent in his will completely waive any type of wrongful death action? No. I believe the decedent in his will, for instance, and that's a good example, in his will the decedent, let's say the decedent had a spouse and three children. And in this will the decedent could, let's say I want to leave all of my assets and everything to two children, but not my spouse and another child. Now, the assets that belong to the decedent, the assets that actually flow through the decedent's estate have to be distributed according to that will, but not wrongful death proceeds. He cannot affect by that will, he cannot affect the fact that the statutory beneficiaries, the spouse and the children, have the right to that claim. It cannot be extinguished by that action of the decedent. Again, it goes to, if there's a substantive defense that would defeat the viability of the decedent's claim, then certainly the wrongful death claim does not lie. If, for instance, in this case Joyce Godd would have signed a release or exhausted her claim, then upon her death, Sue Carter and the other beneficiaries would not have had a claim. But what Joyce Godd could not have done, which is very similar to what, to the arbitration agreement situation. Let's say she entered an agreement with the facility that simply said, if based on the care I receive here, I have a personal injury claim, I will agree that the choice of law would be the law of the state of Georgia. Now, if in fact she had a valid arbitration agreement that contained that, or a valid agreement, then I think she can limit herself to Georgia choice of law. But let's say that she still had a viable claim at the time of her death, and then her beneficiaries brought a wrongful death claim. Are they then required to use Georgia law or to be subjected to Georgia law? I don't think so. Why? Because that was her claim. She can limit her claim, but this is their claim. And they weren't signatory to that agreement, and she cannot limit it. It's not, in other words, yes, the beneficiaries only have the claim, and it's derivative of a viable claim. But they do not take that claim subject to any and all limitations that may have been imposed by the decedent during her lifetime by contract or some other action, because it doesn't belong to her. Otherwise, why not treat wrongful death claim or the proceeds just as you would any other asset of the estate? They're not treated that way. And so that's the difference here. And there's, you know, this Court has never expanded it to that extent, to make, to basically make the wrongful death claim of the beneficiaries subject to any procedural or other contractual or other type of limitation that may have been imposed by the actions of the decedent unless they were a party to that transaction. So if arbitration agreements can't be enforced as to wrongful death claims where only the decedent signed the agreement, does that mean that all wrongful death beneficiaries would have to sign such an agreement to be valid? No, I don't believe that. I think that there may be, for instance, one of the other reasons that that is true in this case is because the arbitration agreement itself does not specifically state that it, that the parties agree to arbitrate wrongful death claims. I mean, in certain cases that were cited by the appellant, the difference was, it wasn't just, you know, by virtue of the fact that the parties agreed to the wrongful death claim being derivative, the difference was is that those arbitration agreements specifically included wrongful death claims or claims for death as part of the disputes that the parties intended at the time and applied to their wrongful death beneficiaries. So in that sense, that would be an example of perhaps when it would not apply. But I certainly think that that would be an example. I'm kind of confused. How would that work? It seems to me your analysis is based upon the fact that the wrongful death beneficiaries have the damages and it doesn't, not subject to the creditors of the estate and so forth. That seems to be premised on the idea that the decedent prior to her death couldn't take any action that would impair their claims. Right. So if that's the case, how would that, why is that, why would that term in the contract bind them if they didn't cite it? I agree, Your Honor. And I was simply pointing out what was the case in some of the authorities cited by the appellant. But I think in direct answer to your question, just as, yeah, I agree, and I think that the answer is, because it is like any other contract, and because unless there is some specific statute or area of law that would bound a non-signatory to a contract or someone who was not a party to a privity with a contract, that arbitration agreement is the same. So the answer would be yes. Unless there is, you know, unless the beneficiaries are party to a contract, I don't believe that an arbitration agreement or any other contract could be, they would be subjected to any other contract and be bound to any other contract. So again, it's not because it's an arbitration contract, we're simply asking the court to apply general applicable contract principles. They would not be bound to any other contract that they were not a party to unless some other exception applied. For instance, they were under the law a third-party beneficiary. They're not third-party beneficiaries here. So no. Would it have been sufficient here if they required the beneficiaries to sign the contract? Yes. Yes. If the beneficiaries had signed the agreement and if the agreement was otherwise held to be valid, then at that point in time, I think there's no question they would be subject to it, because they're parties to the contract at that point. So essentially what I believe this boils down to is that, again, there is no question that they would be subject to it. And the appellant is arguing for an expansion that this court has not at this point made, and frankly, we are asking the court not to make, because where the state of the law is now supports the whole reasoning and rationale behind the limitation of the limitation that in order for the wrongful death claim to lie, the decedent must have had a viable claim. And again, if the decedent had done, or if Ms. Gott in this case had done anything, settled, signed a release or anything else that would have extinguished, extinguished her right to bring a cause of action for her injuries, if she had done that, then Ms. Carter and the other beneficiaries would not have had their right as well. So, and going sort of backwards here, before you even get to Ms. Gott's case, Ms. Gott's case is a case where she was acquitted. And that aspect we believe, however, that the contract cannot be, or the arbitration agreement cannot be enforced, even as to the survival action brought on behalf of Ms. Gott. And the reason is, as indicated by the appellate court, is that that agreement was not supported by consideration. So it is not, again, the appellate court didn't come up with some creative contractual concept that says that the equivalent obligations are required for mutuality. That's not what they said at all. They acknowledged that if the contract is supported by consideration, then it's a good contract. And that's the reason, because the only consideration were supposed mutual agreements to arbitrate. And because of the reasons that have been well briefed, the appellate court rightfully found that the facility actually did not have any real, realistic or meaningful obligation to arbitrate that would have triggered at any point in time. The consideration, the separate consideration that counsel argues doesn't exist. There was no additional benefit to Ms. Gott based on an offer of $5,000 of attorney's fees or paying the arbitrators. Remember, this was a case under the Nursing Home Care Act. Under the Nursing Home Care Act, she in fact already had a right to reasonable attorney's fees, which in fact would not have been limited to $5,000. And costs. Back to the wrongful death for just a minute, because I see your lights on. I just had one more question. If the agreement was signed by the heirs, by the successors, would that change your argument, or would you be in here saying that it's a contract and agree to limit in some way their rights or to arbitrate it? They are parties to that contract, and if it's an enforceable contract, I think it would be good against them. And if there's three heirs and two sign off, the one would have the same argument? Again, based on the fact that they could file a wrongful death action? Yes, Your Honor, we're talking about basic contract principles, and while an arbitration agreement should be on equal footing, and that's all, equal footing, it should be treated like any other contract in this State. Is that workable, though? I mean, my last hypothetical, is that workable, three heirs, two sign off, one, and then the court, how does the court work that? You have an arbitration agreement with respect to two of the heirs that signed off, and then the one gets to file a wrongful death action, and a jury comes up with an award there, and they would get all the proceeds from that? Well, I think as cited, as recognized by the appellant in their brief, even the court, the Federal Court, talking about arbitration under FAA, recognized that there may be situations where some portion of the claims were arbitrable and others were not. That's just, I mean, and so that's the situation. But the flip side of that, Your Honor, would be, again, to hold nonparties to a contract, to a contract, which is against basic contract law. Thank you. Thank you. I'd like to address just a couple of points. My colleague made the argument that the court's never made the wrongful death claim subject to procedural or contractual limitations imposed by the decedent. In fact, if the court reads this court's decision in the Biddy case, that addresses that issue. In Biddy, essentially what was at stake was, it's not called this in the opinion, but for lack of a better term, a choice of law provision. The decedent in Biddy was employed by a company in Michigan. At that time in Michigan, the workers' comp laws only applied if the employer and the employee agreed that they would be applied. And if they did not come to that agreement, then the employer had no liability under the workers' comp laws to the employee if the employee would get injured in the course of his employment. What happened was that the employer contracted with an employee to bring the decedent around so that he could take pictures of some trains and things. Unfortunately, the airplane crashed and it crashed in Illinois. In that case, the beneficiaries of the estate got the benefit of the choice that the decedent had made under Michigan law because he and the employer had agreed that it would be subject to the workers' comp statute. They had a choice. They could recover under the workers' comp statute or they could bring a third party claim in court. Essentially, the decision that the decedent made was binding on the heirs. They chose to recover under the workers' comp statute and then tried to bring a separate action in Illinois, arguing that they were not signatories to the contract and they hadn't agreed to the agreement between the employer and the decedent. And this court held that that was not the right advice to pull an end run around the choice that the decedent had made to say you get one of two remedies. The second point, my colleagues suggested that the arbitration agreement does not state that it covers wrongful death act claims. And if you could excuse me for a moment. I'm sorry. I forgot to bring this with me. But what the act says after reciting the intention to bind the facility and its representatives is that the resident, his or her successors, assigns agents, attorneys, insurers, heirs, trustees and representatives, including the personal representative or executor of his or her estate and the legal representative his or her successors assigns. That's who's bound. The personal representative here is at least a successor to the decedent's claims at the very least. But it also applies to the representative and to the executor. One other point. My colleague mentioned the Trover case, the appellate court's decision in Trover. That is actually an interesting case. She was talking about it in the context of a case that indicates that non-signatories are not bound to an arbitration agreement. What was going on in that case was that there was a dispute between the members of some LLCs who had gotten together in an effort to develop golf courses and those kinds of things. And when the dispute arose, the defendants attempted to compel arbitration. And the court goes through a litany of defendants and finds that they were not signatories to the agreement and therefore were not compelled to arbitrate. However, it also finds that one of the defendants bought shares of stock in one of the LLCs. And the court finds that by operation of law, that purchaser, the guy who purchased the stock, is bound to the arbitration agreements that are found in the LLC's operating certificates. By buying the stock, he essentially bound himself to those agreements, even though he never signed those agreements. And that's all I have if the court has questions. Otherwise, thank you, Your Honor. Thank you. Case number 113204, Carter v. S.S.C. Oden is taken under advisement as agenda number 12.